2UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In re: Subpoena to National Academy of
Sciences

Misc. Action No. 24-59 (JDB)

## MEMORANDUM OPINION & ORDER

This miscellaneous action arises from a subpoena served on the National Academy of Sciences ("the Academy") in relation to the ongoing Camp Lejeune Water litigation.  Before the Court is Respondent Plaintiffs' Leadership Group's ("PLG") motion to transfer the Academy's motion to quash or modify the subpoena to the United States District Court for the Eastern District of North Carolina ("E.D.N.C."), the venue for the underlying Camp Lejeune litigation.  PLG argues that "exceptional circumstances" warrant transfer under Federal Rule of Civil Procedure 45(f).  The Academy opposes the motion to transfer.  For the reasons that follow, the Court will grant the motion and transfer the Academy's motion to quash or modify the subpoena to the E.D.N.C.

## Background

The Court begins with a brief overview of the underlying litigation from which the relevant subpoena arises.  Camp Lejeune is a U.S. Marine Corps base located in North Carolina.  For decades, people who lived and worked at Camp Lejeune were allegedly exposed to contaminated drinking water.  Mem. of Law in Supp. of Academy's Mot. to Quash or Modify Subpoena [ECF No. 1-1] ("Academy's Mot.") at 4.  To help remedy the harm to victims, Congress passed the Camp Lejeune Justice Act of 2022, Pub. L. 117-168, title VIII, § 804 ("CLJA"), which allows individuals who claim they were exposed to water contamination at Camp Lejeune to file

1

administrative claims seeking compensation for their injuries.  Academy's Mot. at 4.  The CLJA further designates the E.D.N.C. as the exclusive jurisdiction over complaints arising under the Act. CLJA § 804(d).  In the underlying litigation in the E.D.N.C., plaintiffs allege that "the vast majority of the administrative claims submitted under the CLJA have not received a response" and seek "damages and all other appropriate relief for the harm that they have endured as a result of exposure to contaminated and unsafe water at or from Camp Lejeune."  Academy's Mot. at 4 (quoting Ex. B, Academy's Mot. ("Pls.' Master Compl.")).  PLG serves as lead counsel for plaintiffs in this underlying action.  Mot. to Transfer [ECF No. 7] ("PLG's Transfer Mot.") at 4.

The Academy is not a party to the Camp Lejeune litigation.  Academy's Mot. at 1.  The Academy is a D.C.-based "federally chartered corporation," 36 U.S.C. § 150301, that "[upon] request of the United States Government . . . investigates, examines, experiments, and reports on any subject of science or art."  Id. § 150303 (cleaned up).  "[T]he Academy is not a governmental agency," but is rather a "private, non-governmental, non-profit corporation dedicated to exploring science and its use for the general welfare."  Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 193 & n.1 (D.C. Cir. 1992).

On December 12, 2023, PLG served a Rule 45 subpoena on the Academy, seeking information related to the development of the Academy's 2009 report on water contamination at Camp Lejeune, which PLG argues is relevant to issues of general causation and exposure in the Camp Lejeune litigation.  PLG's Transfer Mot. at 4.  Because a subpoena to produce materials "must issue from the court where the action is pending," Fed. R. Civ. P. 45(a)(2), the subpoena was issued in the E.D.N.C.  The Academy produced approximately 200,000 pages in response to the subpoena but objected to the disclosure of any internal deliberations related to the development of its report.  Academy's Mot. at 5.  The parties reached an impasse on the withheld documents,

and on May 8, 2024, the Academy filed a motion in this Court to quash or alter the subpoena.  Id.; PLG's Transfer Mot. at 2.  On May 22, 2024, PLG moved in this Court to transfer the Academy's motion to the E.D.N.C. PLG's Transfer Mot. at 1.[1]  The Academy filed an opposition, Opp'n to PLG's Transfer Mot. [ECF No. 14] ("Academy's Opp'n"), and PLG filed a reply, Reply Mem. in Supp. of PLG's Transfer Mot. [ECF No. 15] ("Reply").  The motion is fully briefed and ripe for decision.

## Legal Standard

Under Federal Rule of Civil Procedure 45, a subpoena recipient who objects to its scope may move to modify or quash the subpoena in the court for the district "where compliance is required." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).  "When the court where compliance is required did not issue the subpoena," the compliance court may transfer the motion if it "finds exceptional circumstances." Id. 45(f).[2]  The term "exceptional circumstances" is not defined in the text of Rule 45, but the advisory committee note provides guidance on its interpretation: while a court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas," transfer may be warranted to "avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.  The proponent of transfer bears the burden of proving that exceptional circumstances exist, and the advisory committee note further states that transfer is appropriate only when the interests supporting transfer outweigh the nonparty's interest in obtaining a local resolution of the issue.  Id.

---

[1] PLG also requested that the Court transfer its contemporaneously filed motion to compel the Academy's compliance with the subpoena.  PLG's Transfer Mot. at 1.  Because the transfer analyses are identical, the Court considers transfer of both motions together.

[2] Fed. R. Civ. P. 45(f) also permits transfer if "the person subject to the subpoena consents."  The Academy informed the Court that it did not consent to transfer to the E.D.N.C.  See Statement Opposing Transfer [ECF No. 4] at 2.

Thus, courts weighing transfer under Rule 45(f) must carefully balance the "interest of the nonparty in obtaining local resolution of [the subpoena-related] motion" against the interest "in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court." Judicial Watch, Inc. v. Valle Del Sol, Inc., 307 F.R.D. 30, 34 (D.D.C. 2014).   Factors courts consider include "the complexity of the underlying matter, its procedural posture, the duration of pendency of the underlying case, and nature of issues pending before, or already resolved by, the issuing court in the underlying litigation."  Id.  At bottom, these factors can be distilled into three overarching considerations: (1) whether refusing to transfer the motion in question will disrupt the underlying litigation, (2) whether transferring the motion will impose undue burdens or costs on the nonparty subpoena recipient, and (3) whether the issuing court—the destination of the motion if transferred—is in a better position to rule on the motion.  See In re Disposable Contact Lens Antitrust Litig., 306 F. Supp. 3d 372, 376 (D.D.C. 2017); In re Braden, 344 F. Supp. 3d 83, 90 (D.D.C. 2018).

<u>Analysis</u>

Because (1) there is a substantial risk that failure to transfer the motion would disrupt the underlying litigation, (2) transferring the motion would not impose undue burdens or costs on the Academy, and (3) the E.D.N.C. is in a better position to rule on the motion, the Court concludes that "exceptional circumstances" are present and will grant PLG's motion to transfer.

**I.      Transfer Avoids Disruption to the Underlying Litigation**

The unique procedural posture of this case—in which 1,700 civil actions have been consolidated in the E.D.N.C.—weighs heavily in favor of transfer because failure to transfer risks disrupting the underlying litigation.  As then-Judge Ketanji Brown Jackson concluded, the fact that an issuing court was tasked with overseeing an underlying action "<u>precisely because</u> a single

tribunal needs to adjudicate all discovery issues and other pretrial matters for the sake of consistency and efficiency," is "an exceptional circumstance that weighs heavily in favor of transfer." In re Disposable Contact Lens, 306 F. Supp. 3d at 377.  Although the In re Disposable Contact Lens underlying action was being litigated as a multidistrict litigation ("MDL"), much of that court's reasoning applies here.

For instance, the court explained that exceptional circumstances existed because "the entire point of the MDL mechanism is to allow one judge to take control of complex proceedings," and that "in enacting [the MDL statute], Congress intended to provide centralized management of pretrial proceedings and to ensure their just and efficient conduct." Id. (cleaned up).  Here too, Congress clearly intended to centralize management of these proceedings by specifically designating the E.D.N.C. as the exclusive jurisdiction over complaints arising under the CLJA. The Academy's argument that the CLJA "does not displace Rule 45(f)'s exceptional circumstances standard" because "[t]he Act says nothing about jurisdiction or venue for a motion to quash a subpoena under Rule 45," Academy's Opp'n at 5, therefore misses the mark.  The CLJA certainly does not displace the Rule 45(f) standard, nor does it require this Court to transfer a subpoena-related motion to the E.D.N.C.  But the E.D.N.C.'s exclusive jurisdiction under the CLJA does strongly support a finding that exceptional circumstances are present here.

Moreover, the fact that the E.D.N.C. "has already supervised substantial discovery" weighs in favor of transfer.  See In re Disposable Contact Lens, 306 F. Supp. 3d at 379.  All discovery relating to the Camp Lejeune litigation has, up until this point, proceeded in the E.D.N.C.  The magistrate judge overseeing this vast discovery process has presided over ongoing discovery disputes for over a year and has set up a standing discovery conference with the parties every two to three weeks.  See PLG's Transfer Mot. at 4–5.  And like the issuing court in In re Disposable

Contact Lens, the E.D.N.C. has "managed [the] proceedings in a centralized fashion," with Magistrate Judge Jones issuing specific orders managing the scope of discovery and setting specific timelines for at least a subset of plaintiffs bringing complaints under the CLJA, with an eye towards setting specific timelines and deadlines for the remaining plaintiffs.   Case Management Order No. 2 at 8–12, Camp Lejeune Water Litig. v. United States, Civ. A. No. 23-00897 (RJ) (E.D.N.C. Sept. 27, 2023), ECF No. 23.   Thus, it is clear to this Court that transferring this matter to the E.D.N.C. would avoid disruption of the carefully managed proceedings already underway in that district.

## II.     Transfer Does Not Place an Undue Burden or Cost on the Academy

The Academy does not argue that transfer to the E.D.N.C. would impose a burden or undue cost.   Nor could it.   Where, as here, a nonparty is represented by counsel familiar with both the underlying litigation and the issuing court and the issuing court accommodates telecommunication methods for litigating the matter, "the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced."   Lipman v. Antoon, 284 F. Supp. 3d 8, 11 (D.D.C. 2018) (quoting Judicial Watch, 307 F.R.D. at 35); see also Google, Inc. v. Digital Citizens All., Misc. A. No. 15-707 (JEB/DAR), 2015 WL 4930979, at *4 (D.D.C. July 31, 2015) ("[T]he encouragement of utilizing telecommunications as an alternative to travel is adequate to avoid undue burden on the nonparties in this context.").

Like the nonparties in Lipman and Digital Citizens, the Academy retained counsel familiar with the issuing jurisdiction: Venable LLC.   See F.D.I.C. v. Willets, Civ. A. No. 7:11-165 (BO), 2013 WL 1943461, at *1 (E.D.N.C. May 9, 2013) (Venable LLP appearing in the E.D.N.C. for a discovery dispute).   Moreover, the Academy's counsel recently participated in one of Judge Jones's discovery conferences and observed the deposition of one of the Academy's former

chairmen in the underlying litigation, demonstrating its familiarity with the litigation at issue.  See Reply at 2.  And any burden on the Academy is further reduced given its opportunity to telecommunicate with Judge Jones; in fact, Judge Jones's Discovery Dispute Protocol specifically calls for telephonic discovery conferences.  Discovery Dispute Protocol at 1, Camp Lejeune Water Litig., Civ. A. No. 23-00897 (E.D.N.C. Nov. 21, 2023), ECF No. 55.  Transfer will thus impose little, if any, burden on the Academy.

### III.    E.D.N.C. Is in the Best Position to Decide the Motion

While courts weighing Rule 45(f) motions to transfer should not "assume[] that the issuing court is in a superior position to resolve subpoena-related motions," Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment, courts favor transfer when the subpoena dispute implicates the underlying litigation and requires an understanding of the full scope of the underlying litigation to properly assess the need for subpoenaed documents, see In re Braden, 344 F. Supp. 3d at 94–95; Wultz v. Bank of China, Ltd, 304 F.R.D. 38, 46–47 (D.D.C. 2014).  For instance, in In re Braden, the court transferred a motion to quash where the respondents asserted First Amendment, attorney-client, and work-product privilege claims.  See 344 F. Supp. 3d at 93.  In concluding that transfer was necessary, the court explained that ruling on respondents' claims would "require the court addressing the dispute to evaluate the relevance of the documents sought" and that the issuing court, which was more familiar with respondents' arguments, was in a better position "to evaluate the importance of the documents sought" against the asserted privileges.  Id. at 93–94.  Similarly, in Flynn v. FCA US LLC, 216 F. Supp. 3d 44 (D.D.C. 2016), the court transferred a motion to quash where the respondents' principal argument revolved around the question of relevancy: the court concluded that "the relevance argument advanced emphasizes the need for the [issuing court] to decide the matter" because it was "in a much better position . . . to evaluate relevance."  Id. at

47; see also In re Disposable Contact Lens, 306 F. Supp. 3d at 381 (transfer proper where "ruling on the enforceability of the subpoena would require an assessment of the relevance of the documents at issue to the complex claims being litigated in the underlying MDL"); Wultz, 304 F.R.D. at 46–47 (issuing court was in a better position to rule on the motion, which implicated the foreign state secrets privilege, in part because of the need to avoid inconsistent rulings if future, similar motions asserting privilege arose).

The parties' subpoena dispute, which centers around the Academy's privilege assertion over its internal deliberations, see Academy's Mot. at 5–17, is the type of dispute that judges in this District have held will favor transfer.  Ruling on the underlying subpoena motion requires balancing the need and relevance of the requested documents against the privilege asserted by the Academy.  See 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2043 (3d ed. 2024) ("It is well settled that there is no absolute privilege for trade secrets and similar confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure."); see also Plough Inc. v. Nat'l Acad. of Scis., 530 A.2d 1152, 1155 (D.C. 1987) ("The person resisting discovery on the basis of confidentiality must first demonstrate that disclosure might be harmful.  The burden then shifts to the party seeking discovery to establish that the disclosure is both relevant and necessary to the action. . . . the trial court must [then] balance the need for the information against the injury that would result from disclosure.").  Like the judges in In re Braden, Flynn, In re Disposable Contact Lens, and Wultz, this Court—which has no familiarity with the underlying litigation—is in a worse position relative to the E.D.N.C. for evaluating the need for these documents against the backdrop of the case.[3]

_____

[3] Moreover, while Judge Jones has not ruled on a privilege dispute "completely identical" to the issue the Academy raises, Academy's Opp'n at 4, he has presided over discovery disputes resembling the asserted privilege in

Finally, the Academy's citation to <u>FDIC v. Galan-Alvarez</u>, Misc. A. No. 15-752, 2015 WL 5602342 (D.D.C. Sept. 4, 2015), does not convince this Court that it is better positioned than the E.D.N.C. to rule on the motion.  As the Academy points out, <u>Galan-Alvarez</u> stands for the proposition that when a motion to quash "presents a legal question separate from the underlying litigation's merits, the issuing Court . . . is in no better position to decide it."  Academy's Opp'n at 4 (citing <u>Galan-Alvarez</u>, 2015 WL 5602342, at *3).  But for the reasons previously stated, the Academy's motion does not present a legal question entirely separate from the underlying litigation.  Accordingly, the Court concludes that the E.D.N.C. is in a superior position to decide the Academy's motion to quash.

## <u>Conclusion</u>

The Court concludes that exceptional circumstances exist for transfer where the CLJA designates the E.D.N.C. as the exclusive jurisdiction over complaints arising under the Act, transfer avoids interfering with the underlying litigation in the E.D.N.C., transfer will not burden the Academy, and the E.D.N.C. is best positioned to rule on the motion to quash.[4]  Accordingly, the transfer interests outweigh the Academy's interest in a local resolution and transfer is warranted.

*       *       *

---

this case.  Specifically, the government asserted (and the court found applicable) the deliberative process privilege related to draft reports regarding water contamination research conducted at Camp Lejeune.  <u>See</u> Order Denying Mot. to Compel at 2, <u>Camp Lejeune Water Litig.</u>, Civ. A. No. 23-897 (RJ) (E.D.N.C. Sept. 27, 2023), ECF No. 85.

Judge Jones recently dealt with part of this issue when he denied the Academy's motion to prevent the deposition of the Academy's former chairman Dr. Christopher Portier.  Order Denying Mot. for Protective Order at 5–8, <u>Camp Lejeune Water Litig.</u>, Civ. A. No. 23-897 (RJ) (E.D.N.C. June 11, 2024), ECF No. 234.  In denying the motion, Judge Jones balanced the relevancy of Dr. Portier's testimony against the burden it would impose on the Academy.  The court's order further demonstrates the E.D.N.C.'s familiarity with the relevant issues in the underlying litigation.

[4] The Court reaches the same conclusions as to PLG's motion to compel compliance with the subpoena.

For the reasons stated above, and upon consideration of the entire record herein, it is hereby

ORDERED that [7] respondent's motion to transfer is **GRANTED**; it is further

ORDERED that [1] petitioner's motion to quash or modify subpoena is hereby transferred to the United States District Court for the Eastern District of North Carolina (Southern Division); and it is further

ORDERED that [8] respondent's motion to compel compliance with subpoena is hereby transferred to the United States District Court for the Eastern District of North Carolina (Southern Division).

**SO ORDERED**.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  July 10, 2024

10